**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**QRYPT INC.,**

                    Plaintiff,

        ~ *against* ~

**QRYPTONIC LLC,**

                    Defendant

**Index No. 1:25-cv-05275**

Before District Judge Alvin K. Hellerstein

**MEMORANDUM OF LAW** *by*
**DEFENDANT QRYPTONIC LLC** *in Opposition to*
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
WITH TEMPORARY RESTRAINING ORDER**

**A**  **Table of Contents**

**B.**   **Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**C.**   **Factual and Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**D.**   **Argument**: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    This Court has no Personal Jurisdiction
      Over the Defendant Qryptonic. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      a.    Defendant Qryptonic is
            not "Essentially at Home"
            In the State of New York. . . . . . . . . . . . . . . . . . . . . . . . 4

      b.    There is no Specific Jurisdiction
            Over Defendant Qryptonic
            in the State of New York . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   Motion for TRO Brought
      More than a Year After Plaintiff's
      Were Aware of Alleged Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  The Qrypt Mark is Generic,
      or at Best, Descriptive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   There is no Actual Confusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    An Appropriate Undertaking
      Should be Tendered to the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**E.**   **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## B.    <u>Introduction</u>

A year after the Plaintiff became aware of the alleged infringement at issue, *See* Chalker Affidavit in Support (ECF 42, Jan. 22, 2026) the Plaintiff moved on an emergency basis late last week for this Honorable Court to issue a Temporary Restraining Order and Preliminary Injunction.  While the Defendant would respectfully ask for an appropriate briefing schedule on the Motion for a Preliminary Injunction, they ask that the Motion for a Temporary Restraining Order not be granted because the Plaintiff has not and cannot show a likelihood of success on the merits.

First, this Honorable Court has no personal jurisdiction over the Defendant.

Second, by the Plaintiff's own description they have been aware of the alleged infringement for a year, *See* Chalker Affidavit (alleging that a Cease & Desist was issued in February 2025).  It is a strange sort of irreparable injury that allows a full calendar to pass before acting to protect themselves from the alleged damage.

Third, the "Qrypt" Mark is generic or, at best, descriptive and cannot bar the Defendant from their use of a Mark that contains the term as part of a different word, with different style and presentment to customers.

Fourth, there is no likelihood of success because it is plain from the respective USPTO Trademark Applications (and the history of the USPTO Application for the Plaintiff's Qrypt Mark) that the Parties are not engaged in direct competition and there is no likelihdood of confusion by the relevant customer base.

Under the leadership of Lt. Gen. Mark E. Weatherington (Ret.) and the Defense Innovation Council, Qryptonic works as a business consultant in the field of permanent post-quantum readiness and to prepare governmental and private business units for quantum risk

quantification, cryptographic inventory and other issues related to cyber-security, all in Trademark International Class 35, *See* https://qryptonic.com/ and https://tsdr.uspto.gov/#caseNumber= 99060323&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusS earch.  By contrast, the Plaintiff is in Trademark International Class 42 for data encryption and data management, See https://www.qrypt.com/ and https://tsdr.uspto.gov/#caseNumber= 87590608&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusS earch

Nothing in the Chalker affidavit plausibly alleges any actual confusion and it is obvious why.  The parties' respective services are, separately, aimed at extremely sophisticated government and private parties.  Those hiring consultants for post-quantum encryption issues are not impulse buyers at a check-out, who may be confused by the "similar offerings" by the parties and have any possibility of confusion.

Fifth, imposing a Temporary Restraining Order (and Preliminary Injunction) would impose significant damage on the Defendant, some of it irreparable, as described more fully by the Defendant's accompanying Affidavit.  Therefore the balance of equities tips against granting the Temporary Restraining Order.

Last, to the extent that the Honorable Court was inclined to impose a Temporary Restraining Order on the Defendant, the Defendant respectfully submits that it should do so subject to an appropriate Undertaking to protect the Defendant if and when it will be determined that the Temporary Restraining Order was improvidentially granted.

For these reasons and as argued more fully below (and will be presented at the hearing today) the Defendant respectfully submits that the Temporary Restraining Order should be denied.

Given the time restraints that the Defendant is operating under to file this Memo, they respectfully reserve the right to more fully discuss the legal issues at the hearing today and to fully brief all issues on the return date to be set for the court on the Preliminary Injunction.

### C.    Factual and Procedural Background

As it emerges from the Plaintiff's Affidavit and that of the Defendant (submitted simultaneously with this Memorandum) the Defendant went live with their project under the Qryptonic brand in or about October 2024.  On or about February 27, 2025 for the Registration with the U.S.P.T.O. of the word mark "Qryptonic", U.S.P.T.O. Serial No. 99060323.  A complete, true and accurate copy of the Trademark application of which the Court can take Judicial Notice of  at  https://tsdr.uspto.gov/documentviewer?caseId=sn99060323&docId=APP20250227190206&linkId=4 and incorporated in this Memorandum by reference.

The Defendant's trademark application is being reviewed by Trademark Examining Attorney Jessie Maihos, who on August 11, 2025, confirmed that there is no potential conflict between the Defendant's use of the Mark Qryptonic with the Plaintiff's unrelated "Qrypt".  *See* Nonfinal Office Action, a complete, true and accurate of which the Court can take judicial notice and which is at   https://tsdr.uspto.gov/documentviewer?caseId=sn99060323&docId=NFIN20250811103500&linkId=2#docIndex=1&page=1.

Though the Plaintiff knew of the potential infringement in at least February 2025, they took no action other than send a Cease & Desist.  They did not file suit and did not move for an injunction.  Substantively, rather than proceed through the administrative process at the U.S.P.T.O., and upon the approval of the Defendant's Trademark file a Notice of Petition to object, the Plaintiff filed this suit to leapfrog the administrative process in the wrong court for the wrong claims.

3

C.    **Argument**

I.    **This Court has no Personal Jurisdiction
      Over the Defendant Qryptonic**

a.    **Defendant Qryptonic is
      not "Essentially at Home"
      In the State of New York**

"A court may assert general jurisdiction over a foreign corporation to hear any and all claims against it only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it *essentially at home* in the forum State." *Siasia v. Fédération Internationale de Football Ass'n*, Case No. 22-72, 2022 U.S. App. LEXIS 36512, 2022 U.S. App. LEXIS 36512, at *2 (2d Cir. Jan. 26, 2022)(cleaned up)(unpublished) *quoting Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). In the Second Circuit, *Daimler* applies to all fictitious entities, *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016)("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity.")

"[T]he mere fact that [a Defendant] maintains an office in New York City–even a 'primary' office, whatever that may mean–from which it conducts business does not establish its principal place of business in [New York]." *In Re Sargeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017). "Nor is the bare allegation that [the Defendant] conducts business in New York sufficient to establish that its operations in that office are 'so substantial and of such a nature' as to render [the Defendant] at home in New York." *In Re Sargent*, *Id.*, *citing Gucci Am., Inc. v. Li*, 768 F.3d 122, 135-36 (2d Cir. 2014).

The Complaint on its face alleges that "Defendant is a Florida limited liability company having its principal place of business at . . . Miami, Florida . . .", Compl. ¶ 7. The

Complaint also claims that the Defendant "maintains an office in New York from which it transacts its business" and "from which it promotes its services under the Infringing Mark", Compl. ¶ 4. The basis for this allegation is an undated screenshot that references various global cities, including Miami, Be'er Sheva, and New York, but with no address listed or reference to services provided from New York.

Therefore, even on the face of the Complaint this is a foreign limited liability that maintained a business office in New York, which is patently insufficient to establish that Qryptonic is "essentially at home" in New York.

And as shown in the accompanying Affidavit, there is no New York office and was no such office at the time that the lawsuit was filed.

The Plaintiff cannot establish general jurisdiction over the Defendant in New York. Further, since a fictitious entity is only at home and subject to general jurisdiction in the state of its incorporation or principal place of business, *See Daimler*, 571 U.S. at 137-139, no amount of discovery will adduce facts to the contrary and jurisdictional discovery should not be allowed, *See*, e.g., *Boyer Works*, 2022 U.S. Dist. LEXIS 77606, *15.

      **b.**    **There is no Specific Jurisdiction**
                **Over Defendant Qryptonic in the State of New York**

For Specific Jurisdiction, there must be some act by the Defendant "by which [the Defendant] purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 351, 141 S. Ct. 1017, 1020, 209 (2021) *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958).

Specific Jurisdiction "requires the suit to arise out of relate to the Defendant's contacts with the forum". *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 256, 137 S. Ct. 1773, 1776 (2017)(cleaned up) *quoting Daimler*, 571 U.S. at 127.

There is no non-conclusory allegation in the Complaint that established that the Defendant purposely availed itself of the privilege of conducting activities in New York. The sole potential factual basis in the Complaint to allege "purposeful availment" is the out-of-date screenshot of a website referencing global locations. That allegation is flatly contradicted by the Defendant's Affidavit, which shows there has been no activity in New York State whatsoever.

Other than this allegation of a New York office, there are no non-conclusory allegations of *any connection* with New York State.

It is true that in the Causes of Action purporting to arise under New York law, the Complaint references the Defendant's use of the mark "including in New York", *See* Compl. ¶¶ 69, 70, 75, 76 and 84. But respectfully, those appear to be hornbook recitals of the necessary elements for the causes of action. There is no and can be no substantive allegation in the Complaint that the Defendant's practiced the Mark in New York or that any claim arises from New York activities by the Defendant.

And again, the Defendant's Affidavit conclusively establishes the lack of any New York nexus. Further, per *Boyer Works*, 2022 U.S. Dist. LEXIS 77606, *15, there is no basis for the Court to allow Discovery on a fishing expedition on a barren lake.

Since this Honorable Court has no general or specific jurisdiction over the Defendant, the Complaint should be dismissed.

## II. Motion for TRO Brought More than a Year After Plaintiff's Were Aware of Alleged Infringement

In the event that this Honorable Court determines that there is personal jurisdiction over the Defendant Qryptonic, it should decline to issue the injunction because the Plaintiff waited at least a year after knowing of the alleged infringement before bringing this Motion.

The Second Circuit has long held that while a delay in seeking a TRO may not formally rise to the level where laches kicks in to bar an application for a permanent injunction, " it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction." *Majorica, SA v. RH Macy & Co., Inc.*, 762 F. 2d 7 (2d Cir. 1985) quoting *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275-76 (2d Cir.1985).

*Majorica* also said:

"Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." *Majorica, Id., quoting Citibank, Id.*

We would also highlight now-Justice Sotomayor's decision in *Krueger Intern., Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 611-13 (S.D.N.Y. 1996) in which her Honor collected cases that where six, seven and nine months was too long. Justice Sotomayor also rejected the notion that a party can "manufacture a sense of urgency that is not supported by plaintiff's own conduct. Although the law urges leniency toward a plaintiff who has good cause for delay, either because the plaintiff did not know how severe the infringement was or because the plaintiff was making good faith efforts to investigate" *Krueger, Id.* at 613, a several month delay is not excusable.

### III.    The Qrypt Mark is Generic, or at Best, Descriptive

Courts assess distinctiveness of Marks in four categories of: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary and fanciful." *Bristol-Myers Squibb Co., v. McNeil-P. P.C., Inc.*, 973 F.2d 1033, 1039 (2d Cir. 1992).  *See generally Girl Scouts of the U.S. v. Boy Scouts of America*, 597 F. Supp. 3d 581, 595 (S.D.N.Y. 2022) which discusses the four categories in some depth.

As applied here, the Defendant respectfully submits that Qrypt by itself is a generic term, merely a "Gen Z" or online culture spelling of Crypto, a common term for digital assets that use decentralized networks.  There are no allegations in the Complaint and can be no evidence that Qrypt has acquired any distinctive or exclusive meaning.  *See* for example, *Plus Prods. v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir. 1983) which found "PLUS" to be a common word in the relevant industry and a weak mark.  Furthermore, *Plus Prods.* relied on the finding of T.T.A.B. in opposition proceedings, which this Court can also do here.  The pending trademark application of Qryptonic has already been found by the Examining Attorney not to likely be confused with Qrypt, and the Plaintiff can challenge any final determination at TTAB.

Further, even if the Mark is descriptive, it has still not acquired a strong secondary meaning – certainly no more than the Boy Scouts of America had done to preclude the use of the generally descriptive term for activity in the extremely broad category of cryptography.  And as noted above, the Parties do not claim to be in the same field – the Defendant's mark is in an entirely different class as consultants.

## IV.    There is no Actual Confusion

"It is well settled that the crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978).

As described in the Complaint, the "purchasers" in this case are unusually sophisticated parties who will only potentially contract with the Plaintiff or Defendant after extensive independent research and understanding of the services and value added provided by the business.  We would point to *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984) which found that the Nintendo character "Donkey Kong" did not conflict with Universal's ownership of the "King Kong" franchise because the relevant customers had the sophistication to distinguish the characters – despite the distinct word "Kong".  Similarly, the shared use of "Qrypt" as a portion of the Defendant's name would in no way confuse reasonable consumers in the relevant market.

Tellingly, the Affidavit in Support points to no example of an actual customer who is or was confused between the two relevant Marks and respective services offered by the Parties.

For these reasons, the Defendant respectfully submits that there is no likelihood of success because there is no actual confusion, and the Motion should be denied.

## V.    An Appropriate Undertaking
## Should be Tendered to the Court

To the extent that the Honorable Court were to determine that a Temporary Restraining Order is appropriate, we respectfully submit that an appropriate Undertaking should be required at the level of and for the reasons described in the accompanying Affidavit.

**E.      Conclusion**

For the reasons argued here, the Defendant respectfully submits that the Honorable Court lacks personal jurisdiction over the Defendant and that the case should be dismissed, as no amount of Discovery could conjure up jurisdiction where none exists.  Furthermore, even if the Court were to find that it has jurisdiction over the Defendant, the Court should still dismiss the case for improper venue.  Alternatively, the case should be transferred to the Southern District of Florida.

Substantively, the Defendant respectfully submits that the Complaint fails to make out any cause of action and therefore the Complaint should be denied with prejudice on the merits.

DATED:      **JANUARY 28, 2026**

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Moving Defendant*

## <u>CERTIFICATE OF SERVICE</u>

On January 28, 2026, I served the above **Memorandum** on the Docket through the CM/ECF system which will send a copy to all Counsel of Record who have appeared.

DATED: January 28, 2026

RESPECTFULLY SUBMITTED,

By: _____

Baruch S. Gottesman, Esq.